This is an action brought by the receiver of the Cavalier County National Bank to foreclose a real estate mortgage upon a dwelling house in the city of Langdon, Cavalier county in this state. The mortgage bears date May 17, 1919, purports to have been *Page 59 
executed and delivered by Adelin Mathieu and Emilie, his wife, and secures the payment of a note of $5,296 and interest. The mortgage states that the premises therein described are the homestead of the mortgagors. Emilie Mathieu did not sign the note but did sign the mortgage. This action was commenced on or about the 21st day of July, 1924. The defendant, Emilie Mathieu, interposed as defenses that her signature thereto was obtained by means of false and fraudulent representations as to the character of the paper; that she at no time acknowledged the mortgage and that the premises constituted the homestead of Adelin Mathieu, her husband, and their children, and that consequently the mortgage was void. Comp. Laws 1913, § 5608. The plaintiff interposed a reply to the answer of the defendant, Emilie Mathieu, wherein he denied the new matter set forth in her answer; and further alleged that in any event the homestead was abandoned by Emilie Mathieu and her husband prior to the commencement of the action and that more than two years had elapsed since the execution of the mortgage and that consequently the defense of homestead is barred by Comp. Laws 1913, § 5610. The defendant, Adelin Mathieu died before the trial of the action. The trial court made findings of fact to the effect that the mortgaged premises consisted of a dwelling house and its appurtenances; "that the same were situated within the town plat of the city of Langdon and did not exceed the sum of $5,000 in value or two acres in extent; that at the time of the execution and delivery of the mortgage, Adelin Mathieu and Emilie Mathieu, were husband and wife living together; that the said Adelin Mathieu was the head of a family consisting of his said wife and six (6) minor children, and that he and his family resided in and occupied the dwelling house located upon the premises in said mortgage described." The trial court further found "that the defendant, Emilie Mathieu, did not acknowledge the execution of the said real estate mortgage before a notary public or any other officer authorized to take acknowledgment in the form and manner required by statute, and that the certificate of acknowledgment attached to the said real estate mortgage is false, untrue and void." Upon these findings the trial court ordered judgment in favor of Emilie Mathieu for a dismissal of the action, and further decreed that the mortgage was null, void and of no force or effect as a lien upon the premises therein described and directed that *Page 60 
the same be cancelled from the record. The plaintiff appeals from the judgment and demands a trial anew in this court.
The undisputed evidence is to the effect that at the time of the execution of the mortgage the premises involved was the family home of Adelin and Emilie Mathieu and their children; also, that such property did not exceed in value or area the amount or extent of a homestead as prescribed by law. The finding of the trial court that Emilie Mathieu did not acknowledge the execution of the mortgage is in accordance with the clear weight of the evidence. While it is true that a certificate of acknowledgment, regular upon its face, is presumed to state the truth; and one who denies the correctness of such certificate has the burden of overthrowing it and must sustain this burden by strong and convincing evidence (Severtson v. Peoples, 28 N.D. 372, 148 N.W. 1054), we are wholly agreed that the evidence in this case was and is sufficient (Rasmussen v. Stone, 30 N.D. 451,152 N.W. 809). According to the testimony of the defendant, Emilie Mathieu, and the notary public who certified to the acknowledgment, Emilie Mathieu did not appear before the notary at all, she in no manner acknowledged the execution of the instrument and the notary's certificate is untrue. Their testimony to this effect is corroborated by that of another witness and the testimony of all three witnesses is corroborated by other facts and circumstances.
Under our statute the homestead of a married person cannot be conveyed or incumbered unless the instrument by which it is conveyed or incumbered is acknowledged by both husband and wife. Comp. Laws 1913, § 5608. The mortgage in this case was not so acknowledged and, consequently, the defense interposed by Emilie Mathieu is well founded (Swingle v. Swingle, 36 N.D. 611,162 N.W. 912; Comp. Laws 1913, § 5608; Birks v. Globe International Protective Bureau, 56 N.D. 613, 218 N.W. 864), unless the homestead was abandoned or the defense founded upon a right of homestead has become barred. Comp. Laws 1913, § 5610.
The evidence is to the effect that Emilie Mathieu, her husband and family, continued to occupy the dwelling house as their home until in November, 1923. At this time Adelin Mathieu (who had been engaged in the drug business in Langdon) disposed of his business in Langdon, and went to Warroad, Minnesota, where he engaged in the jewelry *Page 61 
business. He rented a store building in Warroad for a three year period and a dwelling house for a two year period, with an option to buy the latter at the expiration of the leasehold. There is, also, evidence on the part of the lessor to the effect that Mathieu said that "he wanted to make Warroad his home; if his business went right he wanted to stay there." Emilie Mathieu and the children continued to live in the dwelling house in controversy until on or about June 19, 1924, when she and the children came to Warroad. The household goods and some furniture were also shipped to Warroad. After the arrival of Emilie Mathieu and the children, the family occupied the residence which Adelin Mathieu had rented. The dwelling house in Langdon was left unoccupied and was vacant until the return of Emilie Mathieu and her children that same fall. The whole family lived at Warroad that summer and the children entered school at the beginning of the school year in September. Adelin Mathieu returned to the vicinity of Langdon and operated a threshing outfit that fall. He became ill and died October 18, 1924. Shortly prior to his death he had cleaned the dwelling house in controversy, made certain repairs and kalsomined some of the rooms therein. According to the testimony of Emilie Mathieu this was all done with the end in view of having the family come back and live in it. Shortly after the death of her husband Emilie Mathieu and the children returned to Langdon where they took up their residence in the dwelling house in controversy and have at all times since continued to occupy the same as their home. It is the contention of the appellant that the facts and circumstances in the case show an abandonment of the homestead; that Adelin Mathieu and his family moved to Warroad with the intention of residing there, and that, consequently, they ceased to be residents of Langdon and that their homestead in that city became and was abandoned. While there are some circumstances tending to support this view of the evidence, there are other circumstances which support the contrary view. There is the positive testimony of Emilie Mathieu that she did not intend to remain permanently in Warroad; that it was her intention to return to her home at Langdon; that she was unwilling to sell the home in Langdon, and that in answer to an inquiry regarding it she informed the inquirer that she would not sell it, and that she intended to come back and live there; that when she left Langdon in June, 1924, she intended to *Page 62 
send her children back to Langdon for school that fall; and that when Adelin Mathieu came back to that vicinity in the early fall of 1924, he cleaned the house, made certain repairs and decorated some of the rooms so as to put the house into proper condition for the family to reside there. In addition to the testimony of Emilie Mathieu there are the circumstances that the property was not rented; nor is there any proof that any effort was made to sell or rent it. (Although Emilie Mathieu testified that she would have been willing to have rented the property provided she could have found a renter who would have been willing to take it for only a short time.)
A temporary absence from the homestead will not forfeit the right of exemption where there is a constant and abiding intention to return. 29 C.J. p. 938. Nelson v. Griggs County,56 N.D. 729, 219 N.W. 225. See also Illinois Oldsmobile Co. v. Miller, 199 Iowa, 894, 202 N.W. 751; Schaffner v. Campbell,198 Iowa, 43, 199 N.W. 334; Rosholt v. Mehus, 3 N.D. 513, 23 L.R.A. 239, 57 N.W. 783.
While the statute provides "that no action, defense or counterclaim founded upon a right of homestead in property . . . shall be effectual or maintainable unless such action is commenced, or such defense or counterclaim interposed within two years after the execution of such conveyance or incumbrance," it further provides, "that such limitation shall not apply, if the homestead claimant was, at the time of the execution of such conveyance or incumbrance, in the actual possession of the property claimed and had not quit such possession previous to the commencement of such action, or the interposing of such defense or counterclaim. . . ." Comp. Laws 1913, § 5610. If the testimony of Emilie Mathieu is true then the premises in controversy were not only the homestead of herself and family at the time of the execution and delivery of the mortgage, but they have remained such at all times thereafter, are still such homestead, and have been and are occupied by her and her children as such. The trial court who saw the witnesses and heard the testimony as it fell from their lips believed that Emilie Mathieu told the truth. The findings of the trial court are not based merely upon the declaration of Emilie Mathieu that it was her intention to maintain her home on the premises in controversy, but upon other evidence corroborating such declaration of intention. The trial court concluded that there was no intention to abandon and no abandonment. *Page 63 
In a word, the trial court concluded as a fact that the premises were at all times the homestead of Adelin Mathieu and Emilie Mathieu and their children. And after careful consideration of all the evidence in this case we are of the opinion that such finding is not contrary to, but in accordance with, the weight of the evidence. The judgment of the trial court must be and it is affirmed.
NUESSLE, Ch. J., and BIRDZELL, and BURKE, JJ., and BERRY, Dist. J., concur.
Honorable A.G. BURR, being disqualified did not participate; Honorable H.L. BERRY, Judge of the Sixth Judicial District, sitting in his stead.